Elizabethtown Gas Light Co. *v.* Green.

---

ELIZABETHTOWN GAS LIGHT COMPANY, appellant,

*v.*

GREEN et al., respondents.

On appeal from a decree advised by Vice-Chancellor Van Fleet, whose opinion is reported in *1 Dick. Ch. Rep. 118*.

*Mr. Richard V. Lindabury* and *Mr. Frederic W. Stevens*, for the appellant.

*Mr. James R. English* and *Mr. Joseph Cross*, for the respondents.

PER CURIAM.

The decree below affirmed for the reasons given by Vice-Chancellor Van Fleet.

MAGIE, J. (dissenting).

The appellant, the Elizabethtown Gas Light Company, was the complainant below.

Its bill of complaint founded its claim to equitable relief upon the provisions of "An act to incorporate the Elizabethtown Gas Light Company," approved February 19th, 1855, whereby certain corporate powers and privileges were conferred, under which it alleged appellant had expended large sums of money in erecting a plant for the manufacture, distribution and sale of illuminating gas in the city of Elizabeth. The bill further alleged that James S. Green and others (the respondents) claimed a right to manufacture, distribute and sell such gas in that city under powers conferred by "An act to incorporate the Metropolitan Gas Light Company of Elizabeth," approved February 22d, 1870, and a supplement to that act, approved February 26th, 1873, and charged that respondents threatened and had commenced to erect works and lay pipes with intent to engage in that business in Elizabeth, in competition with appellant. The bill further charged that respondents' claim in that behalf was false and fraudulent.

The prayer of the bill was for an injunction restraining respondents from exercising, to appellant's prejudice, the powers and privileges claimed by them under the two acts last mentioned.

Respondents' answer admitted that they designed and had commenced to do the acts charged in the bill, and claimed the right to do those acts under the provisions of the legislation above cited. They denied the charges of fraud.

Issue was joined on the answer, and, the cause having been brought to hearing on the pleadings and proofs, a decree was made denying the relief prayed for and dismissing the bill.

The appeal is from that decree.

Our inquiry thereon must be directed to determine (1) the

respective rights of the parties in the matter involved in this
litigation, viz., the manufacture and vending of illuminating
gas under legislative grant in the city of Elizabeth, and (2)
whether appellant, if its rights in that respect have been invaded
by respondents, is entitled to the intervention of a court of
equity by its restraining process.

The scope of this inquiry is much narrowed by a general
agreement in respect to the facts and the main principles appli-
cable to the case, as exhibited in the excellent briefs furnished
by the counsel for both parties.

There is no dispute that appellant, by the act which conferred
on it corporate life, acquired a right to manufacture gas, to lay
pipes for its distribution through the public streets of Elizabeth
and there to distribute and sell such gas, and that, under such
rights, it has expended much money in erecting works and lay-
ing pipes and is now engaged in that business.

It is conceded to have been settled in the courts of this state,
that appellant's rights thus acquired are, as against all persons
but the state and its grantees, exclusive in their nature, and that
an invasion of those rights by any, not possessing authority
either *de jure* or *de facto* from the state, will entitle appellant to
relief by the use of the injunction power of a court of equity.
*Pennsylvania R. R. Co.* v. *National R. Co., 8 C. E. Gr. 441;*
*Delaware and Raritan Bay R. R. Co.* v. *Delaware and Raritan
Canal &c., 3 C. E. Gr. 546; Jersey City Gas Light Co.* v.
*Dwight, 2 Stew. Eq. 242.*

It is also undisputed that the acts incorporating the Metropoli-
tan Gas Light Company of Elizabeth confer ample authority to
engage in the business of making, distributing and selling gas in
Elizabeth, in competition with appellant, and that a company
organized under those acts would not, in exercising the powers
thereby conferred, invade any right of appellant.

It is further treated as settled by our cases, that the regularity
of the organization of a corporation cannot be questioned collat-
erally in any court, at the instance of a private person, and that
irregularities and omissions in such organization cannot be taken
advantage of in a proceeding instituted by a private person, but

only in a direct proceeding in behalf of the state, inquiring by what warrant the corporate grant is being used. *National Docks R. R. Co.* v. *Central R. R. Co.,* 5 *Stew. Eq.* 755; *Stout* v. *Zulick,* 19 *Vr.* 599; *West Jersey R. R. Co.* v. *Cape May &c.,* 7 *Stew. Eq.* 164; *Terhune* v. *Midland R. R. Co.,* 11 *Stew. Eq.* 423; *Jersey City Gas Light Co.* v. *Consumers' Gas Co.,* 13 *Stew. Eq.* 427; *New Jersey Southern R. R. Co.* v. *Long Branch,* 10 *Vr.* 28.

With these facts ascertained and these rules conceded, it is evident that the questions for determination are, *first,* whether respondents in doing and threatening to do the acts claimed in the bill and admitted in the answer, have a right to claim under the Metropolitan company and to exercise the powers conferred on it, and, *second,* whether that company has acquired a corporate existence, such as will enable it to exercise such powers in competition with appellant, or is so organized as to forbid collateral inquiry on complaint of appellant and the intervention of a court of equity by injunction.

Some contest is made with respect to the relation of respondents to the Metropolitan company. I deem it unnecessary to review the evidence. It satisfactorily establishes, in my judgment, that respondents have acquired the rights, if any, of those who claimed to have organized that company. If, therefore, by such organization a corporation *de jure* was constituted, respondents, who are its officers and stockholders, are plainly entitled to put in operation its corporate powers. If, by such organization, a corporation *de facto* resulted, no right exists in this court to call in question its organization or enjoin its *de facto* officers and stockholders from making use of those powers.

The real contest in the case, therefore, turns upon the organization of the Metropolitan company.

The evidence makes it clear, I think, that when books were opened in 1870 for subscriptions to the stock, two thousand shares were subscribed for. Those who subscribed made no payment whatever upon the stock, and did no other act in furtherance of the purposes of the incorporation, until 1873. The supplement of that year, above referred to, gave authority for the

election of directors (in case of a previous failure to elect) in the same manner as was presented in the original act. The subscribers to the stock and their representatives, without having paid a dollar on the stock, seem to have elected, in April of that year, directors of the company, who afterward elected a president and other officers. Thereafter the form of an organization seems to have been maintained, though irregularly, but nothing has been done until very recently to carry out the design intended by the legislative grant.

It is the language of our cases, and the conceded rule, that if, by such an organization, a corporation *de facto* came into existence, its organization cannot be impeached on the demand of appellant, but only upon inquisition by the state. Did the organization, which is thus disclosed, constitute a *de facto* corporation which may exercise the powers granted to the Metropolitan company, free from the examination and restraint of any court, at the instance of one injured by such exercise.

I think it obvious that the only circumstance which can be claimed to give appellant a right to be heard in respect to such organization, is the omission of those who subscribed to the stock and claimed to have organized the company to make the payments required by the charter.

By its provisions five per cent. of the par value of each share of stock was required to be paid by the subscriber therefor at the time of subscription, and the election of directors was not to be made until after $30,000 had been subscribed and paid in. As before stated, no such payments were made at all.

Moreover, the evidence compels the inference that those who attempted this organization purposely evaded making the required payments. They made, instead, a mere pretence of payment, claiming that pretence to give an apparent and the only right to organize. This was not done under any misconstruction of the act as to the amounts to be paid or the time of payment. It was a deliberate and calculated evasion of a law, the purport of which was plain, and, as the means adopted to evade it show, perfectly understood. Their conduct in that respect was and must be pronounced to have been a fraud upon the act under-

which they professed to organize and the powers granted by which they proposed to acquire. Respondents' rights have been obtained from those who must be charged with the original evasion of and fraud upon the act.

With respect to the payments thus omitted to be made, the learned vice-chancellor, who advised this decree, first dealt with the claim that the charter made them a prerequisite to organization, so that they were of the nature of a condition precedent annexed to the grant. In this aspect of the case he held that, if the charter made the payments a condition precedent, the condition was imposed solely for the benefit of creditors of the proposed corporation, and that the state alone could take advantage of its breach.

That the legislative scheme made the payments a prerequisite to organization, in my judgment, is plain. This appears from the terms of the act, giving authority to call the meeting for the election of the first board of directors only when $30,000 shall have been subscribed and paid in. This requirement, I think, was not merely directory, for it was imposed not only in the interest of future creditors, but also for a public purpose. The act declared the legislative will that a competing gas company might be organized in Elizabeth, and gave ample powers to that end. The requirement of payment on stock subscribed was also designed to furnish a guarantee of good faith on the part of the subscribers, and as an earnest that the enterprise, deemed to be for the public benefit, was to be so conducted as to produce from the paid-in capital and the credit induced thereby a plant for an actual competition with the existing company. It would tend to thwart that design if the corporate powers could be assumed *mala fides,* by persons having no intention to exercise them, and if the powers so assumed could be put up for sale for the personal profit of those engaged in the scheme, but who had not invested a dollar in the enterprise. The intention could not have been to permit such conduct, for the result must be either that the existing company, holding a monopoly of the business, would exclude competition by purchase of the assumed powers, or that those who desired to enter upon a competing business

would be compelled not only to put up the necessary capital, but also to pay for the opportunity whatever those who had thus assumed control of the charter might choose to exact.

In this view the requirement of payment before organization, if treated as a condition precedent, was imposed for the benefit of the public. But appellant has no special interest in the condition, and if its case must stand on the claim now under consideration, I agree with the learned vice-chancellor that it cannot take advantage of the breach of the condition.

Appellant further claims that no corporation, either *de jure* or *de facto*, resulted from the acts of those who, by evading the required payments, committed fraud upon the act.

In *Jersey City Gas Co.* v. *Dwight, 2 Stew. Eq. 242*, it appeared that Dwight and others claimed to have acquired corporate powers by a pretentious and evasive compliance with the law which required certain payments before organization of the corporation, and the same learned vice-chancellor thus dealt with the matter : " It is admitted, if a corporation, lawfully constituted, usurps a franchise to the injury of another, the jurisdiction of the court is unquestionable, but it is said, that when the usurpation consists of a fraudulent assumption of corporate existence in order to acquire a franchise, the court is powerless to investigate and give redress. Such usurpation, although it produces a most serious private injury, gives no right, it is contended, to a personal remedy in a court of equity. The argument, in my judgment, is unsound both in its logic and its law." He thereupon advised a decree, upon the bill of a private corporation, for an injunction restraining Dwight and his associates from exercising the corporate powers they claimed.

The case in hand presented the same elements and the same contention was made. But the previous decision was not followed, because it was conceived to have been overruled by this court in *National Docks Ry. Co.* v. *Central R. R. Co., ubi supra,* the decision in which was pronounced to be irreconcilable in principle with the former case. But the views of this court in the case referred to were misconceived. For, in that case, there was no fraudulent evasion of, but an exact compliance with,

every formal requirement of the law. Thereupon, this court held, a corporation *de facto* came into existence, amenable for its faults to the state alone, and that a collateral inquiry into the motives and purposes of those who had subscribed to stock could not be demanded by any private person.

A more opposite case is that of *Hackensack Water Co.* v. *De Kay, 9 Stew. Eq. 548.* In that case a bill was filed to foreclose a mortgage purporting to be given by a corporation, upon lands purchased and acquired in its corporate name, securing its bonds. An attack was made on the mortgage and the bonds upon the ground that the corporate organization had not been perfected according to the requirements of its charter, which provided that the organization should be effected as soon as $20,000 of its capital was paid, and that no person should be elected a director who was not a *bona fide* holder of stock. It appeared that the organization was attempted before the paid-up stock warranted such action, and that four of the five directors then chosen had not paid for the stock subscribed for by them. It did not appear how these errors were brought about, but there was nothing apparently to require the inference of an intent to evade the law. Those who acted in the organization proceeded to purchase lands, to adopt a common seal and to erect works, and issued the securities in question. This court held that, under those circumstances, a corporation *de facto* must be considered to have been called into existence, which could not be impeached in that proceeding.

But there are manifest differences between that case and the case in hand.

In that case, it did not appear that the corporate powers were claimed upon a fraudulent evasion of the law. Moreover, the party, who contested the validity of the organization of the company which had issued the bonds and made the mortgage, was itself a corporation which had acquired the franchises of the former company and the lands covered by its mortgage by purchase from a receiver appointed in proceedings in insolvency against it. By this purchase the existence of the former corporation had been recognized. For it could not be contended that

a corporation so organized as to acquire title to lands and to be the subject of a proceeding in insolvency, had not been so organized as to make and issue obligations within its corporate powers. The ground on which the objecting party stood contained an admission of the existence of a corporation, at least *de facto*, and that being admitted, any investigation into its organization was improper in such a proceeding.   Besides, as was pointed out by the learned justice who delivered the opinion, creditors, who had advanced money to the corporation in good faith upon the apparent assumption of corporate powers, were concerned, and it was laid down that, as to such creditors, the regularity and validity of the organization effected under color of the charter could not be impeached.   In this conclusion I entirely agree.   The pseudo-corporation, and those who merely succeeded to its rights, were estopped from setting up even a fraud in such organization for the purpose of protecting property against creditors who dealt in good faith with a corporation so organized.

But in the case before us, respondents claim the right to exercise the corporate powers of a pseudo-corporation, the organization of which was contrived under an intentional evasion of the law.   They are, therefore, making use of such evasion, which was, under the law, fraudulent, not to shield the corporation or property acquired by it from answering to obligations incurred in good faith, but to make the corporate powers thus usurped a weapon of attack upon the rights of appellant.

The differences between these cases (and others of which these are types) are radical, and plainly indicate the necessity of applying different and not inconsistent rules.

When those whose misconduct has given ground for attacking a corporate organization, or those who represent them, attempt to impeach the organization for the purpose of escaping from obligations incurred by the corporation apparently organized, they must be held to be estopped from so doing.   In such a case, the court does not necessarily determine that an organization effected by evasion of and fraud on the law is an organization under color of the law so as to constitute a corporation *de facto*, but only that the parties and their privies are to be held to have

admitted, or to be estopped from denying, its corporate existence as such.

But when one who has been, or is about to be, injured by the exercise of corporate powers, usurped by like misconduct, demands that a court shall investigate and pronounce on the validity of the organization for his protection, a totally different situation is presented. Why should such a demand be repelled when justice can be done by applying a consistent rule and holding that those who organize in willful defiance of the law have not acquired a corporate existence *de facto ?* Had respondents been regularly organized as a gas company, and thereafter attempted to exercise the franchise of operating a railroad or a water company, no one would have the least doubt that a court of equity would have jurisdiction to adjudicate upon such usurpation for the protection of any one injured thereby. That court would not leave such a suitor to the relief which might be afforded by a proceeding by the state. I entirely agree with Vice-Chancellor Van Fleet, that it is unsound in logic and law to hold that, when a corporate existence is fraudulently assumed in order to acquire a franchise, a court of equity is powerless to protect those injured by the exercise of powers so usurped.

The distinction between organizations which constitute corporations *de facto,* notwithstanding irregularities in the proceedings, and organizations based on fraudulent omissions or evasions of the law prescribing the mode of organization, has been recognized in this court. In *Stout* v. *Zulick, 19 Vr. 599,* the learned chancellor pointed to the cases of *Hill* v. *Beach, 1 Beas. 31,* and *Booth* v. *Wonderly, 7 Vr. 250,* as decided on the ground that any organization under which a claim to exercise corporate powers was made, and which had been effected by conduct which was a fraud on the act under which the organization was claimed to have been made, was not within the rule forbidding collateral examination into the corporate existence at the instance of other parties than the state. In *Morris and Essex R. R. Co.* v. *Blair, 1 Stock. 635,* the bill prayed for an injunction against the exercise of corporate powers upon the ground (among others) that there had been a fictitious and fraudulent organization of those

who were exercising such powers.    The answer fully denied the fraud, and the learned master, who heard the cause, found that its responsive denial had not been overcome by proof.    But his opinion and that of Chief-Justice Green, in this court, indicate their view to have been that had a fraudulent, in distinction from an irregular, organization been established, the relief sought could have been granted.

My examination of this cause has resulted in conclusions at variance with the impression produced by the argument.    My conclusions are (1) that those who professed to organize the Metropolitan company could not have claimed, as against appellant, that a corporation *de facto* was thereby constituted, because the organization. was made in evasion of and fraud upon the charter, and the assumption of corporate powers thereunder was, in a legal sense, fraudulent; (2) that respondents have acquired no better right than those who thus effected the organization and whose representatives they are, and (3) that appellant is entitled to protection against respondents claiming to exercise such usurped powers.

I shall, therefore, vote to reverse the decree below, and for a decree in favor of appellant for the relief asked in its bill.

*For affirmance*—DIXON, GARRISON, REED, BOGERT, BROWN, CLEMENT, SMITH—7.

*For reversal*—THE CHIEF-JUSTICE, DEPUE, MAGIE, SCUDDER, VAN SYCKEL—5.